## HOWELL TORPEDO CO. v. E. W. BLISS CO.

(Circuit Court, E. D. New York. November 19, 1901.)

PATENTS—INFRINGEMENT—MARINE TORPEDOES.

The Howell patent, No. 311,325, for improvements in marine torpedoes, claim 1, relating to mechanism to secure fixity of direction of the torpedo and to overcome the effect of any external deflecting force, construed, and *held* not infringed by the mechanism employed for such purposes in the Whitehead torpedo.

In Equity. Suit for infringement of patent. On final hearing.

Joseph L. Levy and Ernest Wilkinson, for complainant.

Joseph A. Stetson and Arthur C. Fraser, for defendant.

THOMAS, District Judge. This suit involves the construction and infringement by defendant of claim 1 of letters patent No. 311,325, issued to Admiral John A. Howell on January 27, 1895, for "certain new and useful improvements in marine torpedoes." Claim 1 is as follows:

"(1) The combination, with the torpedo case or shell and the fly wheel mounted therein, with its rotation axis located substantially as described, to obtain a resultant axis of motion in case of deviating forces acting on the torpedo, of steering mechanism, and suitable devices for controlling the same, arranged and operating substantially in the manner hereinbefore set forth, whereby said steering mechanism shall be brought into action upon occurrence of the resultant motion, and when thus brought into action shall be caused to set up an opposite deviating force, which will counteract and neutralize the initial extraneous deviating force."

It seems to be undoubted that Admiral Howell was the first person to suggest and to use a rapidly revolving fly wheel in a marine torpedo (1) to preserve fixity of direction, (2) to steer the torpedo against the influence of deviating forces. The conception of both purposes is embodied in the letters patent mentioned, and of the first use in letters patent issued to the same inventor in 1871. The conception of this double use was the beginning of the art, and from it has sprung all essential knowledge respecting the directing and steering of torpedoes, although different and better details in the mechanisms employed have been devised by others. Although the merit of the primary conception that fixity of direction and ability to steer marine torpedoes could be acquired by the use of a revolving fly wheel adjusted in the torpedo is due to Admiral Howell, the conclusion cannot be escaped that claim 1 limits the use of the art so created and developed by the inventor, as regards steering, to steering mechanism brought into action by resultant motion, and that the letters show no appreciation of the steering mechanism employed by the defendant. The discussion can proceed clearly only by a description of the device known as a "gyroscope" and an explanation of its phenomena; for, although he does not seem to have identified specifically his proposed mechanism with the gyroscope, nor, at the outstart at least, to have understood that he was utilizing the laws of that instrument, yet the fly wheel proposed to be used by Admiral Howell in the torpedo, in connection with the torpedo's outer shell and the water, is in fact a gyroscope, and obeys its laws. If a swiftly revolving fly wheel be adjusted so that its axis is free to take any direction, its axis, in absence of external disturbing forces, will remain nearly invariable in direction. This, following the descriptive articles, may be called "the stability of direction of the axis of rotation." The fly wheel persists in rotating in the given direction, and so its axis tends to resist any deflecting influence. The gyroscope proper usually is constructed by placing the fly wheel so that it may rotate inside a circular ring around its shorter axis, the axis running

on pivots situated at opposite ends of the ring's diameter. This ring, with its supported fly wheel, is made movable inside a second ring, and around an axis at right angles to the axis of the fly wheel. This second ring in turn, with its contents, is adjusted to rotate inside a third ring, and around an axis at right angles to each of the others. The figure shows a gyroscope with three outer rings, K, L,' and M. For the purposes of the following discussion, L will be termed the outer ring, and M will be disregarded.

Fig. 1.

"It consists of a fly wheel, with a heavy rim accurately turned and balanced, which can rotate round an axis, GC, forming a diameter of the ring; K   This ring also can rotate about the axis, AF, which is at right angles to GC, and is a diameter of the ring, L.  Similarly, this ring. L, can rotate about the vertical axis, BH, which is perpendicular both to GC and AF, and forms a diameter of the ring, M, which is screwed to the heavy sole plate, N."

The fly wheel is free to move on its own axis or that of either ring, but will not move on the latter, while the wheel is rotating rapidly, in the absence of a deviating force; that is, the tendency of the revolving wheel is to keep the rings stationary.   However, when some force other than that impelling the fly wheel is brought to bear on either of the rings, it will cause the fly wheel to turn on the axis of the inner ring, or the axis of the outer ring, or both, accordingly as the force may be applied, pursuant to the law that "a body actuated by several forces moves in the direction of their resultant."   If now it be shown that in practice the presence of one resultant motion brings into play the complainant's steering mechanism, the meaning of claim 1 may be understood.   The specification represents the axis of the fly wheel as transverse to the torpedo, although it states that such axis may be placed longitudinally, but no steering mechanism for the second location is described or suggested.   But by placing the axis transversely, its ends are supported in the shell of the torpedo. In its simplest form this is shown as follows:

Here the sides of the torpedo form the first or inner ring, in which the axis of the fly wheel is located in the gyroscope shown above. The outer ring is absent; but as the water allows the fly wheel, when disturbed, to tip on a vertical axis, and also to either side with lateral motion of the torpedo, the freedom of motion permitted in a gyroscope is attained. So, also, there are attained the resultant motions observed when extrinsic forces come in contact with the rings of the gyroscope. The only resultant motion that is employed by Admiral Howell in claim 1 is that which may take place on the axis of the inner ring of the gyroscope as shown, which corresponds to the longitudinal axis of the torpedo; or, in short, it is the motion of the torpedo rolling on one of its sides. The cause and nature of that lateral rolling are shown by the following figure:

If, as shown, the deflecting force be applied at the starboard bow of the torpedo while the fly wheel is revolving from right to left, looking at the torpedo from that side, the torpedo will roll to port under the influence of the fly wheel made fast to its sides; that is, a new force combined with the existing force operating the fly wheel results in rolling the torpedo sideways, thereby elevating the starboard side and lowering the port side. It is not worth while to try to trace the cause. It is enough that this is the exact law of the gyroscope when subjected to a similar foreign force, and, of course, the result would not be attained except for the presence of a gyro-

scope. But here it is well to keep in mind that an undisturbed gyroscope, acting normally, tends to maintain the first position of its parts, and not to turn on the axes of its outer rings. Hence it is the revolving fly wheel, in connection with the shell of the torpedo and the water, all combined, which results in the rolling, when in collision with the deflecting force. It should be noted carefully that a torpedo, under the influence of the wheel, tends to roll, rather than deviate from its course. The torpedo is now tipped to port. Applying again the same law of the gyroscope, if a force be applied to the torpedo aft of the fly wheel, on the side opposite to that to which it has rolled, the tendency will be for the torpedo, under the influence of the fly wheel, to roll back to starboard, seeking its equilibrium. The following extract and figures from the letters patent explain the steering mechanism and its action and source of action:

"The steering mechanism will now be described. I make use of two steering rudders, O, in the present instance, although I may use one only, or even more than two, if desired. These rudders are vertical, and turn on vertical posts or axes, g, in the framework, f, and are arranged one on each side of the after portion of rear section, E. Each of them is slotted, as indicated by dotted lines in Fig. 7, so that it will straddle the adjoining propeller shaft and framework, and be free to move without interfering with the latter. These rudders are by arms, h, and links or rods, i (which latter pass through tubes, i', in the water-tight part of section E, into the forward open part of said section), connected to opposite ends of a centrally pivoted lever, j, whose axle is provided with a radial arm, j', connected by a link, $j^2$, to a crank arm, $k^2$, on the axle, k', of the tiller, k. Under this arrangement it will be seen that both rudders can, by moving the tiller, be moved to starboard or port or be brought midships, as occasion may demand. The automatic action of the tiller for this purpose is brought about as follows: On one of the propeller shafts G, is a worm, I, Fig. 6, which gears with and drives a wheel, H, mounted on a vertical axle, m', in the open part of section E, and on the same axle is fixed a wheel, H', having a cam rib, m, on its upper face. The axle revolves continuously so long as the propeller shaft revolves. The tiller, K, overhangs the cam wheel H', and at its outer end carries a pivoted arm, h, arranged crosswise of the torpedo, the axle, n', of which is hung in ears or bearings on the under side of the outer end of the tiller, and is connected by means of a flexible shaft, o,—for instance, a shaft of closely coiled wire,—to the axle, p', of a pendulum, p, as indicated in Figs. 6 and 7. The axle, n', of the arm, n, is horizontal, and extends in the direction of the length of the torpedo, and the axis of the pendulum is on the prolongation of it. The arm, n, at its ends has points, $n^2$, one or the other of which will engage the cam wheel whenever the latter is inclined laterally in one direction or the other relatively to the arm. The operation of the parts is as follows: The pendulum, p, tends to keep the points, $n^2$, of the arm, n, always in a horizontal plane, and the cam wheel normally lies in a plane parallel thereto. With the parts in this position, the tiller is midships, as represented in the drawings; but whenever, by an extraneous deflecting force, the torpedo is caused to roll upon its longitudinal axis in one direction or the other, the cam wheel is tilted or inclined in a corresponding direction with reference to the arm, n, which, by its pendulum, is maintained horizontal. Consequently the continuously revolving cam wheel is thrown into engagement with one or the other of the points, $n^2$, of the arm, with the result of putting the helm to port or starboard, as the case may be, the flexible shaft, o, permitting this movement. The steering rudders, when thus moved, set up a deflecting force opposed to the initial extraneous deflecting force, with the result of producing in the torpedo a tendency to roll in the opposite direction, the helm being put to starboard when the torpedo rolls to starboard, and vice versa. This action will continue until the rudders have rolled the torpedo back far enough to permit the disengagement of the arm, n, and cam wheel; or, in other words, until the cam wheel is in its normal horizontal position. In this way it will be seen that the torpedo can be automatically steered or kept from leaving the course in which it was pointed at the time it was launched. The rudders are not simply turned to starboard or port, as the case may be, and held there until the torpedo is brought back to its course. The revolving cam wheel imparts to them a series of impulses, and this is kept up so long as the tilting arm engages the cam wheel. The cam rib may be so formed as to impart one or more impulses to the rudder or rudders for each revolution."

It will be observed that under the intended action of the mechanism duly operating the torpedo is automatically righted or restored to equilibrium, and that this is effected with such quickness that the torpedo is not expected to deflect from its course, or at least the deflection is quickly arrested. The result is that the rudders do not directly steer the torpedo from one direction to another, but in the first instance restore the level of the torpedo; for the deviating force

usually tends in the first instance to cause the torpedo to roll, and not to deviate, and the rudder tends to cause the torpedo to roll in the opposite direction, and not to change the heading of the torpedo. It seems that the steering appliance does not in fact steer the torpedo in the usual way, because, as a rule, it operates before the torpedo leaves its course. But undoubtedly the rudder would, directly or indirectly, bring the torpedo back into its course if there were deviation, and the evidence tends to show that deviation does occur to some extent. This matter is only important as bearing upon the question whether claim 1 makes provision for steering in the usual sense, or only for leveling the torpedo, for in the defendant's machine the torpedo is steered literally. It is considered that the distinction is not sufficient to allow the defendant to escape the charge of infringement if there were not other differences. Thus far it will be seen that the Howell machine only steers when a resultant motion exists. In the absence of such motion there is no occasion for steering, and only that motion can set in operation the steering mechanism. Such is the specification, and such is claim 1. The specification states:

"The gist of my invention, so far as concerns the correcting of deviations in the course of the torpedo, lies in so placing the rotation axis of the fly wheel as to obtain a resultant axis of motion in the case of deviating forces acting on the torpedo, and in combining with the fly wheel thus placed mechanism, termed by me 'steering mechanism,' brought into action by the resultant motion, and arranged and automatically operating to set up an opposite deviating force which will counteract and neutralize the initial extraneous deviating force."

This language is most fortunate to express concisely what is stated with great particularity in other parts of the specification, and describes without other reference that part of claim 1 which relates to steering the torpedo. Before considering claim 1, something may be said briefly about the words "resultant axis of motion," which occur in such claim, as well as in the language quoted above. The scientists connected with the case have disputed concerning the meaning of the phrase, quite unnecessarily for a fair understanding of the inventor's meaning. Admiral Howell states:

"In the patent specification I have used the terms 'resultant axis' and 'resultant axis of motion' meaning by these, not the axis of the fly wheel, or any position which this axis may assume, but that line or axis about which the axis of the fly wheel swings in tilting, due to the action of a deviating force. Thus, if the fly wheel is rotating, and the deflecting force is applied tending to tilt its axis, this axis will tilt, but in a direction approximately 90° from the direction of the deflecting force, and the line about which the whole wheel tilts will be the resultant axis of motion. In the Howell torpedo, with the fly wheel arranged transverse and horizontal, a deflecting force will cause the axis of the fly wheel to tilt up about a line running longitudinally through the torpedo, and this line will be the resultant axis of motion about which the axis of the fly wheel tilts."

Again, he states:

"I use axis in the ordinary sense as the line about which motion takes place, and by 'resultant axis' I mean that axis about which the resultant motion takes place."

Whether the term be used with scientific exactness is unimportant. The inventor's meaning is sufficiently clear. Claim one means: (1) That the fly wheel shall be mounted in a torpedo case or shell, so as "to obtain a resultant axis of motion in case of deviating forces acting on the torpedo"; that is, so that the wheel is free to turn in any direction, as in the case of the gyroscope. (2) That there shall be steering mechanism, and suitable devices for steering the same, arranged and operated substantially in the manner set forth in the specification, which mechanism "shall be brought into action upon occurrence of the resultant motion." Thus it will be seen that, as regards steering, or even a necessity for steering, there must be resultant motion; and such resultant motion, and that alone, by reason of its actual existence, furnishes the condition under which the steering mechanism can be used. In short, if the torpedo does not tilt or roll or tip, there is no possibility of deviation under ordinary influences; hence there is no occasion for steering; and, even if there were, the steering mechanism would not be brought into action. Therefore resultant motion must inevitably precede the operation of the steering gear. Without considering whether defendant's "steering mechanism, and suitable devices for controlling the same," infringe that described in claim 1, which is to be "arranged and operated substantially in the manner hereinbefore set forth," it will be sufficient to illustrate that the defendant's system of steering, as employed in the Whitehead torpedo, is not only not dependent upon "resultant motion," but becomes ineffectual in proportion as such motion occurs. The statement to be illustrated seems to be this: If resultant motion were impossible, the defendant's mechanism would be worthless; if resultant motion actually occur, the function of the defendant's mechanism is impaired or destroyed. Such resultant motion must be possible, otherwise the mechanism would not be a gyroscope. Without a gyroscope, the axis of the fly wheel would not have the fixity which holds the two encircling rings in place, the outer of which rings, so long and so far as it remains stable, and has no resultant motion, is used to steer the torpedo in the manner soon to be explained. This stability arises from and depends upon the revolving fly wheel, and any diminution of that stability—that is, resultant motion—hurts or vitiates the operation of the steering mechanism, while in the Howell torpedo instability of the outer ring is the condition precedent to the operation of the rudders. The Whitehead torpedo, as regards its steering mechanism, is as follows: A gyroscope is placed in the torpedo, with the axis of the fly wheel parallel with the longitudinal axis of the torpedo, which is pointed at the target. As the gyroscope is free to turn on the vertical axis of its outer ring, the torpedo is free to move around such axis when deflected from its course. But the deflection of the torpedo does not deflect the axis of the fly wheel, which remains fixedly pointing at the target. So long as the axis remains fixed, the two inclosing rings remain stationary. If now the valve arm, which sets in motion the steering gear, be so placed that it will engage with a pin on the outer ring when the torpedo deflects to one side or the other, the valve will be opened, and the torpedo

brought back into position. This may be seen clearly by means of the following figure and accompanying explanation:

Plan, showing torpedo deflected.

FIG. 4.

Fig. 4 shows the gyroscopic wheel as supported in the torpedo, so that its axis is free to move in any direction relatively to any point of the torpedo. The axis, a, a, is pointed at the target, and is parallel with the longitudinal axis of the torpedo. If now a deviating force deflect the longitudinal axis of the torpedo to c, c, yet the axis, a, a, of the wheel will remain pointing as before, and the outer gimbal ring will maintain its position. The control pin, d, is set vertically in the outer gimbal ring, within the fork of the valve arm, e. If the bow of the torpedo be deflected to port, throwing the stern to starboard, the forked arm will engage the control pin in the outer gimbal ring on account of the motion of the torpedo, and the steering gear will be set in operation, so that the rudder will tend to swing the torpedo back into its course. If it should swing back so that its axis goes

beyond the axis of the fly wheel, the valve arm will be turned so that the rudders will tend to swing the torpedo back to its true course. This alternating action will tend to direct the torpedo on its true course, as indicated by the axis of the fly wheel. When the valve arm is turned, compressed air is admitted to one end or the other of the cylinder of the engine, and the rudder is thereby turned to port or starboard. The essential fact to be observed is that "the relative movement between the axis of the torpedo and the gyroscope wheel when revolving operates the valve of the steering engine, giving motion to the steering rod; the steering rod, by suitable mechanism, operates a pair of vertical rudders, by which the horizontal direction errors of the torpedo are controlled." But it is not important what the steering mechanism is. It is in detail totally unlike that in the Howell torpedo, and is actuated by a different force and totally dissimilar appliances. The vital element is a stable pin in a stable ring, against which a valve arm, moved by the deviating torpedo, of which it is a part, presses, so as to open a valve and set the steering gear in motion. This stability of the pin in the ring is established by the revolving fly wheel, and depends upon its power; but as the power fails, and the stability of the ring is diminished, the valve arm is pressing against a yielding pin, and, of course, its ability to open the valve is decreased. Now, the pin can only yield when the ring in which it is inserted yields, and such yielding is resultant motion, and is the resultant motion upon whose existence the operation of the steering gear contemplated in claim 1 is dependent. In the Whitehead torpedo the nonexistence of resultant motion, so far as the same can be achieved, is essential to the desired operation of the steering mechanism; in the Howell invention the existence of such motion is at once the occasion and primary cause of the operation of the steering mechanism, without which the steering gear would be passive. This is well expressed in the specification:

"Under these conditions the axis of resultant rotation, or motion due to the application of a laterally deflecting force, will be the longitudinal axis of the torpedo,—in other words, the torpedo will roll; and this rolling can be conveniently availed of to bring into action steering mechanism arranged and operating to apply automatically an opposite deflecting or deviating force, which will restore the status quo. As soon as the rolling ceases, the steering mechanism becomes inactive; but until then it constantly offers to the deflecting force an opposition which in the end overcomes and suppresses it."

Complainant was understood on the argument to contend that, as the stability of either ring in a gyroscope can be possible only when resultant motion is possible, the stability of the ring is traceable to resultant motion. Stability is not the effect of resultant motion, nor is it dependent upon it. Stability of the rings depends solely upon the rotation of the fly wheel undisturbed by friction or extraneous forces, and is the normal condition of the gyroscope in operation. On the other hand, resultant motion is error, fortuitous and undesired rotation of the fly wheel on a second axis, the revolution of a ring, all produced by the introduction of a new force foreign to that under which the fly wheel was operating. The Whitehead steering gear depends upon fixity of axis, and rings, unaffected by an extrinsic

force; the Howell steering mechanism depends upon the introduction of an outer force that shall destroy such fixity, and produce abnormal operation of the gyroscope, and cause the ring to change that status which the revolution of the fly wheel tends to produce. The possibility of resultant motion is indispensable. Its occurrence in the torpedo is a detriment. In the Whitehead it tends to baffle the operation of the steering gear; in the Howell the evil is turned to its own correction. But it is urged on the part of the complainant that perfect stability of the outer ring cannot be secured, and that there must be some resultant motion. To this again and finally it is answered that such resultant motion is the effect of the valve arm pushing against the wheel, and the yielding of the wheel is an infirmity, tending to debilitate or destroy the operation of the steering mechanism; but in the Howell torpedo such motion is the first source of the movement of the steering gear. To Admiral Howell belongs the distinguished honor and service of suggesting the use of a rapidly revolving fly wheel for the purpose of giving fixity of direction to a submarine boat, and for the purpose of steering the same by employing the motions resulting from its disturbance by deviating forces. That is, he made the fly wheel and torpedo parts of a gyroscope, that either maintained its normal position, or automatically made use of its instability to right itself. Such is claim 1, giving it a construction that shall not limit it to the steering mechanism described in the specification to which the claim refers. Admiral Howell did not perceive, so far as can be gathered from the record, that a gyroscope proper could be mounted in the torpedo, complete in itself, and using no part of the torpedo in its combination; hence uninfluenced in its normal movement by any disturbance of the torpedo, and therefore not subject to sensible resultant motion, but in its turn remaining so fixed in all its parts as to influence the course of the torpedo by causing its steering engine to operate when its valve arm came in collision with the practically stable pin in the outer ring. Even if this advantage was observed by Admiral Howell, it was excluded from the claim under consideration. The steering mechanism used in the Whitehead torpedo shows a meritorious advance in the art, and may not be condemned as an infringement of Admiral Howell's invention as expressed in the claim.

The complainant's bill must be dismissed, with costs.